# IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| | : |
| COVENANT PARTNERS, L.P. | : |
| | : |
| DEBTOR | : BANKRUPTCY NO. 14-17568 |
| | |
| GARY F. SEITZ, TRUSTEE | : |
|     PLAINTIFF | : |
|     V. | : |
| | : |
| PETER FRORER, ET AL | : |
|     DEFENDANTS | : ADV NO. 14-0685 |

# OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

Gary F. Seitz, Trustee of the above-captioned estate, has filed a sixteen count complaint against Peter Frorer, Frorer Partners, L.P., Frorer Associates, LLC, Tripartite, LLC, and the Prothonotary of the Montgomery Court of Common Pleas. The complaint seeks to recover property and asks for other relief. Two motions to dismiss the complaint have been filed. The first motion was filed by Tripartite, and the second by Frorer, Frorer Partners and Frorer Associates (collectively, "the Frorer Defendants"). Hearings on the matters were held on March 4, 2015 and March 18, 2015 respectively. The Court thereafter took the matters under advisement. For the reasons which follow, both Motions (with the exception of Count II) will be denied in their entirety.[1]

---

[1] Because these matters involve a demand for turnover of property, requests for disallowance or subordination of a claim, and the avoidance and recovery of preferential and fraudulent transfers, they are

*The Complaint*

The Trustee seeks affirmative and injunctive relief. First and foremost, he seeks to recover property transferred by the Debtor to the Defendants before the bankruptcy filing. The property in question consists of shares of common stock in a company known as Pet360. It is alleged that in 2013 the Debtor transferred to the Defendants 5 million shares of such stock. In 2014, the Debtor deposited another 2.8 million shares with the Montgomery County Court of Common Pleas, but those shares have since been deposited into an escrow account pending the outcome of this litigation.[2]

The Trustee seeks to avoid those transfers under express Bankruptcy Code provisions as well as under applicable state law. In addition to recovery of the stock (or its value), the Trustee asks the Court to either disallow or subordinate the Defendants' proofs of claim and to grant other equitable and injunctive relief.

*Grounds for Dismissal*

The Defendants seek dismissal of 13 of the 16 counts.[3] The basis for dismissal is twofold: first, that the counts fail to state a claim upon which relief may be granted; and second, that the complaint fails to join necessary parties.

*Pleading Standard*

To state a claim under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the

---

within this Court's "core" jurisdiction. *See* 28 U.S.C. § 157(b)(2)(A),(E),(F),and (H) (including among core proceedings such causes of action)
[2] See ¶¶ 101, 121 (alleging that the 5 million shares were transferred on two occasions and are together referred to as the 2013 Transfers; and see also ¶168 (alleging the transfer of 2.8 million more shares to the Prothonotary referred to as the 2014 Transfer)
[3] Count III (Turnover by Custodian) is moot because the stock formerly held by the Prothonotary is now in an escrow account pending the outcome of this litigation. As to Counts VI (Actual Fraud under state law) and XIII (Violation of the UCC), dismissal is not sought.

pleader is entitled to relief." F.R.C.P. 8(a)(2) (made applicable by B.R. 7008). However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). Where, as here, fraud is among the causes of action, the rules require the complaint to include specificity as to the "circumstances constituting fraud" such as the "who, what, when, where, and how." *In re Dulgerian*, 388 B.R. 142, 147 (Bankr.E.D.Pa.2008) (citing *In re Rockefeller Center Properties, Inc. Sec.Litig.*, 311 F.3d 198, 217 (3d Cir.2002)).

## Order of Analysis

The Motions were filed separately. However, because they are based on a common core of facts, and because they involve related defendants, it will be more efficient to analyze them together. To that end, the Court will address the sustainability of each count seriatim

## Count I - Preferential Transfers

The first count alleges that Tripartite is the recipient of an avoidable preference.[4] Section 547(b) of the Bankruptcy Code authorizes a trustee in bankruptcy to avoid certain payments made within ninety days before the debtor files for bankruptcy as "preferential transfers." This section states, in pertinent part:

---

[4] The complaint states that the Prothonotary is named as a defendant in his official capacity only; originally, he was a necessary party because he had possession of the property (stock shares) which the Trustee seeks to recover. ¶ 12. That has since changed: pursuant to the parties' stipulation, the stock shares are now in escrow pending the outcome of this litigation.

[A] trustee may avoid any transfer of an interest of the debtor
in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the
debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the
petition;

* * *

(5) that enables such creditor to receive more than such
creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the
extent provided by the provisions of this title.

11 U.S.C. § 547(b) (emphasis added). A complaint to avoid preferential transfers must

include the following information in order to survive a motion to dismiss:

(a) an identification of the nature and amount of each
antecedent debt; and

(b) an identification of each alleged preference transfer by

(i) date,

(ii) name of debtor/transferor,

(iii) name of transferee and

(iv) the amount of the transfer.

*In re Universal Marketing Inc.,* 460 B.R. 828, 835-836 (Bkrtcy.E.D.Pa. 2011)

*Transfer*

The complaint alleges that on September 11, 2014 William Fretz, a principal of

the Debtor, transferred the Debtor's remaining 2.7 million stock shares (the 2014

4

Transfer) in Pet360 to the Prothonotary of Montgomery County. ¶ 168

*To Or For The Benefit Of a Creditor*

Next, the Complaint alleges that the "2014 Transfer (of stock) to the Prothonotary was for the benefit of Tripartite." ¶ 173. Tripartite is alleged to be the holder of a $2.5 million judgment against the Debtor (¶¶ 160-165), and is therefore, a creditor.

*Antecedent Debt*

The Complaint next alleges that the "2014 Transfer was made for or on account of an antecedent debt owed by the Debtor to Tripartite before the 2014 Transfer was made." ¶ 176. The judgment which Tripartite held against the Debtor was originally held by the Commonwealth of Pennsylvania and was entered on April 3, 2013. ¶ 26. Again, the 2014 Transfer is alleged to have been made on September 11, 2014. ¶ 168. The judgment thus preceded the transfer of the shares to the Prothonotary and constitutes a debt antecedent to the transfer.

*Insolvency*

The complaint next alleges that the Debtor was insolvent on the date the 2014 Transfer was made. ¶177. In challenging the sufficiency of this allegation, Tripartite concedes that the Trustee enjoys the presumption of insolvency for the 90 days prior to bankruptcy, but then argues that the evidence will prove otherwise. Tripartite's Brief, 12 That may turn out to be the case; however, at this stage of the proceedings, the *evidence* is not considered. What matters is what is *plead* by the Trustee.

*Timing*

The complaint alleges that the 2014 Transfer was made within ninety 90 days of the bankruptcy filing. ¶ 173. The bankruptcy was filed on September 19, 2014. ¶ 170

5

The 2014 Transfer occurred on September 11, 2014. ¶ 168. That date is within the 90 day preference period.

*Greater Recovery Than*
*Under Chapter 7*

Finally, the complaint alleges that the 2014 Transfer enabled Tripartite to receive more than it would have received if its recovery were limited to what it would receive in a Chapter 7 distribution. ¶ 178

All five elements of preferential transfer having been plead, the Court finds that Count I sufficiently alleges a prima facie case against Tripartite.

*Count II - Recovery of*
*Avoided Preference*

Having alleged a prima facie case for the avoidance of a transfer, the Trustee requests the recovery of that property. The Prothonotary was alleged to be the initial transferee of the stock shares. ¶ 182. The relevant statute provides that "the trustee may recover…from (1) the initial transferee of such transfer." 11 U.S.C. § 550(a)(1). Since this suit was filed, however, the parties' stipulated that the 2014 Transfer should be placed in escrow until judgment is entered. That moots the recovery claim and Count II will be dismissed on that basis.

*Count IV*

Count IV alleges actual fraud against the Frorer Defendants based on § 548 of the Bankruptcy Code. That section provides, in pertinent part:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred

6

> by the debtor, that was made or incurred on or within 2 years
> before the date of the filing of the petition, if the debtor
> voluntarily or involuntarily--
>
> (A) made such transfer or incurred such obligation with
> *actual intent to hinder, delay, or defraud* any entity to which
> the debtor was or became, on or after the date that such
> transfer was made or such obligation was incurred, indebted;

11 U.S.C. § 548(a)(1)(A) (emphasis added).

To state a claim for avoidance of a transfer based upon actual fraud under the Bankruptcy Code, 11 U.S.C. § 548(a)(1)(A), a plaintiff must allege that the debtor made the transfer with the actual intent to hinder, delay or defraud a creditor. The pleading requirements for such claims are set out by Rule 9(b), which requires a trustee to "plead the circumstances constituting the alleged fraudulent conveyances with particularity." *Bratek v. Beyond Juice, LLC,* 2005 WL 3071750, at *6 (E.D.Pa. Nov. 14, 2005). Nevertheless, a trustee may plead intent generally under the second sentence of the rule. *River Road Dev. Corp. v. Carlson Corp.–Ne.,* 1990 WL 69085, at *10 (E.D.Pa. May 23, 1990). The requirements of Rule 9(b) are generally relaxed and interpreted liberally where a trustee is asserting the fraudulent transfer claims. *In re APF Co.,* 308 B.R. 183, 188 (Bankr.D.Del.2004). Nonetheless, even afforded such latitude, the plaintiff must provide more than mere legal conclusions and cannot simply repeat the elements of the cause of action. *Mervyn's LLC v. Lubert–Adler Grp. IV (In re Mervyn's Holdings, Inc.),* 426 B.R. 488, 494 (Bankr.D.Del.2010)

With regard to the Debtor's principals' state of mind, the Complaint alleges generally an intent to defraud. ¶ 197. It is well recognized, however, that a transferor will rarely admit to acting with a fraudulent purpose, so the circumstances surrounding the transfer become material. *In re American Rehab & Physical Therapy, Inc.,* 2006 WL

1997431, at *16 (Bankr.E.D.Pa. May 18, 2006) Those circumstances consist of the

common law "badges" of fraud. *See In re Valley Bldg. & Const. Corp.*, 435 B.R. 276,

285–86 (Bkrtcy.E.D.Pa. 2010) They include:

> (1) the transfer or obligation was to an insider;
>
> (2) the debtor retained possession or control of the property transferred after the transfer;
>
> (3) the transfer or obligation was disclosed or concealed;
>
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (5) the transfer was of substantially all the debtor's assets;
>
> (6) the debtor absconded;
>
> (7) the debtor removed or concealed assets;
>
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*In re Pinto Trucking, Inc.*, 933 B.R. 379, 386 (Bkrtcy.E.D.Pa.1988)

The Complaint sets forth at least four of the above-cited badges: Nos. 4, 5, 8 and

9. The transfer of the stock shares was prompted by Frorer's repeated threats to sue

the Debtor and its principals (#4). ¶¶ 65, 72-81, 96. The stock is alleged to be the

Debtor's principal asset (#5). ¶¶ 133, 134. The value of stock is alleged to be worth well

in excess of what the Debtor owed Frorer and the partners (#8). Compare ¶ 27 with

8

¶157. After the stock was transferred, the Debtor would be left with nothing to pay creditors (#9). ¶¶ 133-134. It might be argued that these allegations, while serious, tend to bear on what Frorer was intending than on what the principals were thinking at the time of the transfers.

Viewed in the context of the Debtor's history, however, the allegations provide a sense of the principals' state of mind when the stock was transferred. The Debtor was a private equity fund run by Messrs. Fretz and Freeman. ¶ 16. Their alleged mismanagement of the fund was the subject of a state attorney general's lawsuit. ¶ 24. That suit resulted in a $2.5 million judgment entered against the principals in April 2013. *Id*. Their contemporaneous and subsequent[5] transfers of the Debtor's most valuable asset for little consideration raise valid questions as to their bona fides with respect to the entities' limited partners. Taking all of the alleged circumstances together, therefore, the Court finds that Count IV states a claim for actual fraud.

*Constructive Fraud*

Counts V and VII also charge the Frorer Defendants with fraud, but the fraud alleged is of a different type. In these two counts, the fraud is not based on the actor's state of mind; rather, it arises from circumstances under which transfers of the property were made. Referred to as "constructive" fraud, it is provided for in the Bankruptcy Code:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, … if the debtor voluntarily or involuntarily-

---

[5] The timing of the transfers is not an issue. The Debtor commenced this case in September 2014. The transfers in question were made subsequent to September 2012, but before the bankruptcy was filed. ¶¶ 101, 121, 168. That is within two years prior to bankruptcy as the statute requires.

* * *
(B)(i) received less than a reasonably equivalent value in
exchange for such transfer or obligation; and
(ii)(I) was insolvent on the date that such transfer was made
or such obligation was incurred, or became insolvent as a
result of such transfer or obligation;

11 U.S.C. § 548(a)(1)(B) That is the legal basis for Count V. Its state law counterpart

provides:

A transfer made or obligation incurred by a debtor is
fraudulent as to a creditor whose claim arose before the
transfer was made or the obligation was incurred if the
debtor made the transfer or incurred the obligation *without
receiving a reasonably equivalent value* in exchange for the
transfer or obligation and the debtor *was insolvent* at that
time or the debtor *became insolvent* as a result of the
transfer or obligation.

12 P.S. § 5105. That is the legal basis for Count VII. Like a claim alleging actual fraud, a

claim for constructive fraud is also subject to the higher standard of specificity. *See In re

The Harris Agency, LLC*, 465 B.R. 410, 417 n.12 (Bkrtcy.E.D.Pa.2011) (noting the split

of authority within this District, that the Third Circuit has not yet ruled on the question,

and concluding that requiring the higher pleading standard is within the court's

discretion).[6]

*Reasonably Equivalent Value*

The first element of a constructive fraud claim is that the debtor received less

than a reasonably equivalent value in exchange for what was transferred. *Image

Masters, Inc. v. Chase Home Finance*, 489 B.R. 375, 386-387 (E.D.Pa. 2013) Both

Counts V and VII allege that in exchange for the stock the Debtor received less than

---

[6] As with the actual fraud claim, timing is likewise not an issue as to the constructive claim under either
the Bankruptcy Code or the state law fraudulent transfer law. The Code's provision applies to transfers
made within two years prior to bankruptcy and the state law expands that to four years from the date that
the transfer was made. *See* 12 P.S. § 5109(2).

reasonably equivalent value. ¶¶ 203, 220. The consideration which the Debtor received

was the forgiveness of the balance on a $300,000 loan. ¶ 2 It is alleged that the loan

balance was $175,000 when the Debtor transferred the stock to the Frorer Defendants.

¶¶ 30, 97. The total number of shares given in exchange was 7.8 million.[7] The value of

the stock is alleged to be $1 per share. ¶ 157. That makes the total value of the stock

transferred well in excess of what the Debtor owed the Defendants.

*Insolvency or Other
Financial Impairment*

In addition to one-sidedness or imbalance in the exchange, it must also be

alleged that the debtor's financial state was compromised at the time. Unlike a

preference action, fraudulent transfer law does not presume insolvency and so it must

be plead. *See In re The Brown Publishing Company*, 2014 WL 1338102, at *5

(Bkrtcy.E.D.N.Y., Apr. 3, 2014). Counts V and VII allege that the Debtor was insolvent

when the 2013 transfers were made. ¶¶ 204, 219. While no specific financial information

is alleged on this point, the Court can reasonably infer that the Debtor's financial health

was either tenuous at the time of, or irreparably harmed by, the transfers of the stock.

For example, the Trustee begins with the allegation that Frorer threatened the Debtor's

principals with a coming "train wreck" should they not transfer additional stock to him.

¶ 131. A somewhat clearer allusion to financial straits appears three paragraphs later:

Frorer is alleged to have written that he should be the one to offer to buy the Attorney

General's $2.5 million judgment because "there is little inside [the Debtor]." ¶ 134. That

---

[7] The transfer of that stock occurred over more than one year beginning in March 2013 and ending in September 2014. In March 2013 the Debtor is alleged to have transferred upward of 3 million shares of stock to Frorer. ¶ 101 In September 2013 another 2 million shares of stock were transferred to the Defendants. ¶ 121 In September 2014, another 2.8 million shares was deposited with the Prothonotary of Montgomery County ¶ 168.

suggests that the Debtor had insufficient assets to satisfy the judgment. The clearest indication of the Debtor's financial condition appears two paragraphs after that: the Trustee quotes a memo wherein Frorer writes that total claims are well in excess of what the Debtor is worth. ¶ 136. These allegations suffice for alleging insolvency of the Debtor for the four years prior to bankruptcy.

Having alleged both that the Debtor received less than reasonably equivalent value in exchange for the stock, and that the Debtor was either insolvent when the stock was transferred or rendered insolvent as a result, Counts V and VII state a claim for constructive fraud under both the Bankruptcy Code and its state law counterpart.

*Recovery of
Fraudulent Transfers*

Because the Trustee has plead that the Defendants received a transfer avoidable under the constructive fraud provisions of both the Bankruptcy Code and the PUFTA, he is entitled to recover these transfers under § 550(a)(1) of the Code. In response, Defendants raise the defense that they are good faith transferees under § 550(b)(2). At this juncture, that is premature. An affirmative defense such as good faith should be raised later. *See In re Bressman*, 327 F.3d 229, 235-36 (3d Cir. 2003) (placing the burden of proof of good faith upon the transferee)

*Aiding and Abetting
a Fiduciary Breach*

Count IX charges the Frorer Defendants with aiding and abetting the Debtor's principals in breaching their fiduciary duties. This cause of action has been recognized by Pennsylvania courts. *See Official Comm. of Unsecured Creditors of Allegheny Health Educ. & Research Foundation v. PWC, LLP*, 989 A.2d 313, 327 n. 14 (Pa. 2010)

(observing that the Commonwealth Court has recognized the cause of action) To establish this cause of action, a plaintiff must show: (1) a breach of fiduciary duty owed to another; (2) knowledge of the breach by the aider or abettor; and (3) substantial assistance or encouragement by the aider or abettor in effecting that breach. *Adena, Inc. v. Cohn,* 162 F.Supp.2d 351, 357–358 (E.D.Pa.2001). As a breach of fiduciary claim is subject to a notice pleading standard, *see In re Total Containment,* 335 B.R. 589, 611 (Bankr.E.D.Pa. 2002), that standard will similarly govern a claim that one aided and abetted another breaching such duty.[8]

*Underlying Fiduciary Duty*

Because the Debtor is a Delaware limited partnership, the existence of fiduciary duties cannot be assumed. That state's limited partnership law provides that the partners may agree that no such duties arise. See 6 Del. Ch. 17-1101(d) (providing that the limited partnership agreement may waive fiduciary duties). Here, however, the Complaint does not reference or cite from the Debtor's operating agreement, and so the Court is not informed as to whether the partners opted to forego fiduciary responsibilities. In such an instance, those duties arise by default. *See Auriga Capital Corp v. Gatz Properties*, 40 A.3d 839, 851 (Del.Ch. 2012) (concluding that where limited partnership agreement is silent as to whether fiduciary duties apply, such duties will be presumed to apply). That leaves three issues: first, what specific duties are owed; second, who is charged with such duties; and third, to whom are the duties owed.

---

[8] The Frorer Defendants agree that if Delaware law is controlling as to the elements of this cause of action, they are not meaningfully different from the Pennsylvania elements. Frorer Br. 50 n.10. Delaware law requires the plaintiff to add the allegation of resulting damages. *See Bay Center Apartments Owner LLC v. Emery Bay PKI LLC*, 2009 WL 1124451, at *10 (Del. Ch. Apr. 20, 2009)

13

*Fiduciary Duties*
*Under Delaware Law*

Delaware law recognizes two general categories of fiduciary duties: care and

loyalty.[9] TVI Corp. *v. Gallagher*, 2013 WL 5809271, at *13 (Del.Ch. Oct. 28, 2013). In

the case of a limited partnership, the general partner of a Delaware limited partnership

owes the traditional duties of care and loyalty to the limited partners. *Gotham Partners*

*LP v. Hallwood Realty Partners LP*, 2000 WL 1476663, at *10 (Del.Ch. Sept. 27, 2000)

Having established the requisite fiduciary duties owed to limited partners and

who must exercise them, the Court must determine who the general partner is in this

case. This is necessary because of the Debtor's rather convoluted ownership structure.

The complaint identifies Covenant Capital Management LP (CCM LP) as the Debtor's

general partner. ¶ 17. Yet because CCM LP is a limited partnership, it must itself have a

general partner. The general partner of CCM LP is identified as Covenant Capital

Management, Inc. (CCM Inc.) *Id*. CCM Inc, in turn, is alleged to be owned and

controlled by Messrs. Fretz and Freeman. *Id*. As the individuals who control the general

partner of the limited partnership which is the general partner of the Debtor, Messrs.

Fretz and Freeman owed fiduciary duties to the Debtor's limited partners. *See also*

*Lewis v. Aimco Properties*, L.P., 2015 WL 557995, at *5 (Del.Ch. Feb. 10, 2015)

(individuals and entities who control general partner owe to the limited partners a duty of

loyalty); *Lake Treasure Holding, Ltd v. Foundry Hill GP, LLC*, 2014 WL 5192179, at *10

(Del Ch. Oct. 10, 2014) (same)

---

[9] The Trustee cites another duty, the duty to act in good faith, but that duty is already subsumed in the
duty of loyalty. *Stone ex. rel. Amsouth Bancorp. v. Ritter*, 911 A.2d 362, 370 (Del. 2006).

*Duty of Care*

The duty of care entails the management of the company with the "care which ordinary, careful, and prudent persons would use in similar circumstances." *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005) aff'd 906 A.2d 27 (Del.Ch. 2006). Implicated here is the business judgment rule which presumes that a "director's business judgement is made on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Reliance Sec. Litig.*, 91 F.Supp.2d 706, 732 (D.Del.2000). The threshold for finding a breach of that duty is relatively high. *Smith v. Van Gorkom*, 488 A.2d 858, 881 (Del. 1985), overruled on other grounds, *Gantler v. Stephens*, 965 A.2d 695 (2009)

The Complaint, however, alleges a potential instance of gross negligence which would satisfy even a high standard. That is to say that it is questionable, to say the least, why Fretz and Freeman would transfer stock of so much value in exchange for the satisfaction of relatively little debt. ¶¶ 228, 229. Given the circumstances alleged, this decision on its face is inexplicable. Accordingly, this element of the cause of action is sufficiently plead.

*Duty of Loyalty*

Those same allegations, if proven, would easily go beyond mere misjudgment and arguably constitute self-dealing. Under the duty of loyalty, fiduciaries owe a duty to avoid financial or other cognizable fiduciary conflicts of interest. *Stone ex rel, supra*, 911 A.2d at 370. The Complaint alleges that Messrs. Fretz and Freeman breached that duty when they saddled the Debtor with their personal debts and then used partnership property (the Pet360 stock) to pay them off. ¶¶ 228, 229. The complaint thus sets forth

15

two ways in which Messrs. Fretz and Freeman failed in discharging their fiduciary responsibilities.

*Knowledge*

To charge the Frorer Defendants with aiding or abetting those breaches, the Complaint must first set forth the requisite mental state on their part. The complaint imputes knowledge of the principals' wrongdoing to Frorer. It is alleged that when Frorer attempted to consolidate all three loans and collateralize them with the Pet360 stock (¶¶ 36, 80) he was aware of this impropriety because he offered to give the Debtor a buy back option. ¶¶ 36, 70, 78. Further, he is alleged to have acknowledged the possibility of such arrangement being illegal but stated that it was not his problem. Rather, it was the Debtor's. ¶ 82. Finally, he is alleged to have further conceded that if he were to take the Pet360 stock, the Debtor's limited partners might object. ¶ 117. As the complaint relates it, Frorer was aware that in taking the stock, questions of propriety would arise.

*Assistance or Encouragement*

Along with the Frorer Defendants' knowledge of the fiduciaries' breach, the complaint must also allege that they "substantial[ly] assist[ed] and encourage[d]" such conduct. Those terms have not been specifically defined by Pennsylvania courts in this context. However, in an analogous context, they have been. Pennsylvania law recognizes the tort of "concert of action." *Charan Trading Corp. v. Uni–Marts, LLC (In re Uni–Marts, LLC),* 399 B.R. 400, 412 (Bankr.D.Del.) It derives from the Restatement of Torts and provides:

> For harm resulting to a third person from the tortious conduct of another,
> one is subject to liability if he

16

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) *knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself,* or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876 (emphasis added). This is instructive for present purposes because it has as its elements (knowledge, substantial assistance or encouragement) the same two elements found in aiding and abetting a fiduciary breach. The Comment to Clause (b) of § 876 provides that "[i]f the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act." The Court finds these interpretations reasonable and will employ them to assess the sufficiency of what this count alleges.

As the complaint alleges it, the Frorer Defendants rendered more than substantial assistance to the principals in breaching their duties. They are portrayed as having initiated the fraudulent transfer of the Debtor's most valuable asset. The complaint alleges that Frorer prepared sham documents to recharacterize their transaction from what was originally an unsecured loan to a secured obligation. In addition, the extent of the Debtor's responsibility for such loans was likewise increased. See ¶¶ 104-111. On the strength of this, the complaint sufficiently states a claim for aiding and abetting a breach of fiduciary duty against the Frorer Defendants.

17

*Gist of Action*

Counts X, XI and XII plead two common law tort counts (fraud and conversion) and one equity action (unjust enrichment). The Frorer Defendants challenge these counts on two separate bases. In addition to arguing that each is insufficiently plead, they maintain that the essence of each count belies the characterization of the claim as sounding in tort or equity. They refer here to the "gist of the action" and "economic loss" doctrines. The gist of the action doctrine precludes tort claims "1) arising between the parties; 2) when the alleged duties breached were grounded in the contract itself; 3) where any liability stems from the contract; and 4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim." *Reardon v. Allegheny Coll.,* 926 A.2d 477, 486 (Pa.Super.Ct.2007).[10] The economic loss doctrine "precludes recovery in tort if the plaintiff suffers a loss that is exclusively economic, unaccompanied by an injury to either property or person." *Bouriez v. Carnegie Mellon Univ.,* 430 Fed.Appx. 182, 187 (3d Cir.2011). Accordingly, "a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." *Bohler—Uddeholm Am., Inc. v. Ellwood Grp., Inc.,* 247 F.3d 79, 104 (3rd Cir.2001) (internal quotation omitted).

No fraud claim lies here, say the Frorer Defendants, because the parties' legal relationship is defined by a Collateral Release Agreement. They maintain that under

---

[10] The Pennsylvania Supreme Court has not adopted the gist of the action doctrine, but the Third Circuit Court of Appeals predicted that this doctrine would be adopted based on its consistent application in the Pennsylvania Superior Court. *Bohler—Uddeholm Am., Inc. v. Ellwood Grp., Inc.,* 247 F.3d 79, 103 n. 10 (3d Cir.2001) (citations omitted).

that agreement, the Pet360 stock was transferred to them for consideration. That, they say, refutes any claim of fraud (or, for that matter, conversion or unjust enrichment). Frorer Defendants' Brief, 14-16

The Trustee's response is that the Collateral Release Agreement is not the basis of his suit, but is, instead, an indicia of the fraud which is its legal premise. The Collateral Release Agreement, says the Trustee, is a sham: it is a manufactured transaction intended to imbue with legitimacy the wrongful transfer of the Debtor's most valuable asset. These transfers, the Trustee alleges, were not made pursuant to that agreement because they occurred both before and after the agreement. The Trustee asserts that neither of the tort claims, nor the equity claim, is a disguised augmentation of the damages arising from a breach of contract. Each is, instead, an independent cause of action supported by allegations of wrongdoing. Trustee's Brief in Opposition to Frorer Defendants' Motion (Tr. Br. Frorer) 29-33.

From its review of the pleadings, the Court agrees that the gist of the action and economic loss arguments are not well made. The Trustee's characterization of the true nature of the Collateral Release Agreement will at this stage be given deference. Moreover, where the cause of action is fraud in the inducement, Pennsylvania case law has not applied the gist of the action doctrine. *Etoll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 19 (Pa.Super.2002) (applying the gist of the action doctrine to fraud in the performance). It must be, and is, acknowledged that the parties signed the Collateral Release Agreement, which leaves open the ultimate question of whether the Agreement governed the parties' relationship. However, a definitive ruling on the gist of the action/economic loss arguments would not be appropriate at this time. See *Weber*

*Display & Packaging,* 2003 WL 329141, at *4 (E.D.Pa. Feb. 10, 2003) ("Often times,

without further evidence presented during discovery, the court cannot determine

whether the gist of the claim is in contract or tort."); *see The Knit With v. Knitting Fever,*

*Inc.,* 2009 WL 3427054, at *7 (noting that "courts in this district have shown some

reluctance to dismiss claims for fraud in the inducement or negligent misrepresentation

early in the litigation"). For that reason, the Court rejects these arguments at this time.

*Common Law Fraud*

Leaving aside questions of characterization, the Court turns to the legal viability

of the tort and equity claims. Count X charges the Frorer Defendants with a claim of

common law fraud.[11] Pennsylvania common law defines a prima facie case of fraud as:

(1) a representation; (2) that is material; (3) that is made falsely with knowledge or

reckless indifference of its falsity; (4) with intent to mislead another; (5) justifiable

reliance; and (6) resulting injury proximately caused by the reliance. *Blumenstock v.*

*Gibson*, 811 A.2d 1029, 1034 (Pa.Super.2002).

*Representation*

The Count alleges that Frorer represented to the Debtor that the Pet360 shares

transferred by the Debtor to him would be returned when the loan was repaid. ¶ 233. It

is further alleged that such representation was false as Frorer had no intention of

returning the shares. ¶ 234. Later, the Complaint alleges that Frorer indicated his

intention to keep the Pet360 shares once he learned of an imminent buyout of Pet360 at

five times the existing stock price. ¶ 143.

---

[11] The Bankruptcy Code affords a trustee the power to recover a transfer avoidable under applicable non-bankruptcy law. See 11 U.S.C. § 544(b).

*Reliance*

The Complaint must next allege that the Debtor's principals relied on the misrepresentation when they agreed to transfer the stock. The level of reliance must be justifiable. *See Field v. Mans*, 516 U.S. 59, 74-75, 116 S.Ct. 437, 446 (1995). The complaint does not explicitly aver what precisely prompted Fretz and Freeman to transfer the Pet360 shares to Frorer, other allegations, however, clearly allow a reasonable inference that they relied on his promise to return the shares once his problems with his auditors were resolved. Frorer is alleged to have made that representation, and on more than one occasion. ¶¶ 70, 71, 88. That the shares would ultimately be returned is alleged to be the Debtor's principals' understanding as well. ¶ 98. The complaint, accordingly, sufficiently alleges reliance on Frorer's representation, which reliance appears justified based on existing circumstances. Finding all five elements to be adequately plead, the Court finds that Count X states a claim for common law fraud.

*Conversion*

Count XI charges the Frorer Defendants with having converted the Debtor's Pet360 stock. The classic definition of conversion under Pennsylvania law is "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655, 659 n. 3 (Pa.Super.2000). Although the exercise of control over the chattel must be intentional, the tort of conversion does not rest on proof of specific intent to commit a wrong. *Id.*

The Complaint alleges that the Frorer Defendants kept the stock shares which were intended to secure the loan to the Debtor and its principals. ¶¶ 147-148. The value of those shares is alleged to be well in excess of the loans. Compare ¶¶ 27, 30, 93 with ¶ 157. Frorer himself is alleged to have admitted to a plan whereby he would sell the foreclosed shares to a special purpose entity, which would in turn sell them to a Costa Rican entity, which would then place the shares in trust for Frorer and his spouse. ¶ 143 These allegations are sufficient to support a conversion claim.

*Unjust Enrichment*

Count XII is based in equity. Specifically, it attempts to plead a case of unjust enrichment. Pennsylvania courts have held that "'[u]njust enrichment' is essentially an equitable doctrine." *Styer v. Hugo*, 422 Pa.Super. 262, 267, 619 A.2d 347, 350 (Pa.Super.Ct.1993). In Pennsylvania, a party seeking to plead unjust enrichment must allege the following elements: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) the defendant's acceptance and retention of the benefit 'under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" *Giordano v. Glaudio*, 714 F.Supp.2d 508, 530 (E.D.Pa.2010) (quoting *Filippi v. City of Erie*, 968 A.2d 239, 242 (Pa.Commw.Ct.2009)). Under these circumstances, "the law implies a contract between the parties pursuant to which the plaintiff must be compensated for the benefits unjustly received by the defendant." *Styer*, 422 Pa.Super. at 268, 619 A.2d at 350. The existence of such a contract "requires that the defendant pay the plaintiff the value of the benefits conferred...." *AmeriPro Search Inc. v. Fleming Steel Company*, 787 A.2d 988, 991 (Pa. Super. 2001).

22

Having rejected the Defendants' argument that the Trustee's claims are "most fundamentally contractual," the Court turns to the substantive allegations of Count XII. It is alleged that the Debtor conferred a benefit on the Frorer Defendants by transferring the Pet360 shares to them. ¶ 246 Further, that they have retained this benefit whose value is elsewhere alleged to be well in excess of what was owed to the Defendants. ¶¶ 148, 248. It is alleged that the Defendants' retention of that benefit would be inequitable. These allegations are sufficient and the Court will deny the Defendants' request to dismiss this count.

*Equitable Subordination*

Count XIV of the Complaint seeks equitable subordination of the Defendants' Proofs of Claim. In that regard, § 510 provides:

> (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
>
> (i) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest

11 U.S.C. § 510(c)(1). The Third Circuit has explained that "[b]efore ordering equitable subordination most courts have required a showing involving the following three elements: (1) the claimant must have engaged in some type of inequitable conduct, (2) the misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant, and (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code." *Citicorp Venture Capital Ltd. v. Committee of Creditors Holding Unsecured Claims (In re Papercraft Corp.),* 160 F.3d 982, 986–987 (3d Cir.1998) citing *U.S. v. Noland,* 517 U.S. 535, 116 S.Ct. 1524, 134

L.Ed.2d 748 (1996) (describing existing case law as consistent with the three-part test

identified in *In re Mobile Steel Co.,* 563 F.2d 692, 700 (5th Cir.1977)).

The Frorer Defendants maintain that the complaint fails to allege any acts of

fraud, spoliation or over-reaching as against any other creditor. Neither, they say, is

there any allegation that they acted in any egregious or severely unfair manner. Frorer

Br. 58. The Trustee's response is that the allegations in the Complaint set forth exactly

such conduct. It is alleged, he counters, that the Defendants have caused the Debtor's

principals to advantage the Defendants over other creditors. ¶¶ 122, 133. This was

alleged to have been done without excuse or other justification. ¶ 148. The effect was to

deprive the Debtor of its most valuable assets; i.e., the Pet360 stock shares. ¶ 169.

Considering that the purpose of equitable subordination is "to undo or to offset any

inequality in the claim position of a creditor that will produce injustice or unfairness to

other creditors in terms of the bankruptcy results," *Citicorp Venture Capital, Ltd. v.*

*Comm. of Creditors Holding Unsecured Claims (In re Papercraft Corp.)*, 323 F.3d 228,

233 (3d Cir.2003), the allegations, taken as true for purposes of this motion, support

subordination of the Defendants' claims.

*Claim Disallowance*

Count XV of the Complaint asks the Court to disallow the Proofs of Claim of the

Defendants because they are recipients of unreturned avoidable transfers. This request

is based on Code § 502 which provides, in pertinent part:

> Notwithstanding subsections (a) and (b) of this section, the
> court shall disallow any claim of any entity from which
> property is recoverable under section 542, 543, 550, or 553
> of this title or that is a transferee of a transfer avoidable
> under section 522(f), 522(h), 544, 545, 547, 548, 549, or
> 724(a) of this title, unless such entity or transferee has paid

> the amount, or turned over any such property, for which such
> entity or transferee is liable under section 522(i), 542, 543,
> 550, or 553 of this title.

11 U.S.C. § 502(d). The Defendants' rejoinder is that such a cause of action is

premature. Until an adjudication of the avoidance claim is made in the Trustee's favor,

the request to disallow the claims on that basis is unripe. Frorer Def. Br. 59-60;

Tripartite Br. 32-33. Trustee's response is that a plaintiff may request joint related relief

even if one is contingent on the other. Tr. Br. Frorer 37 citing F.R.C.P. 18(b) made

applicable by B.R. 7018.

There is a split of authority on whether it is premature to plead a § 502(d) claim

before an adjudication of an avoidance and recovery claim. *Compare In re Damon's Int.,*

*Inc.*, 500 B.R. 729, 739 (Bkrtcy.W.D.Pa. 2013) quoting *In re Odom Antennas. Inc.,* 340

F.3d 705, 708 (8th Cir.2003) (citing *In re Davis,* 889 F.2d 658, 661–62 (5th Cir.1989))

(explaining that "the purpose of section 502(d) is to ensure compliance with judicial

orders," and holding that the statute's language "indicates section 502(d) should be

used to disallow a claim after the entity is first adjudged liable; otherwise, the court

could not determine if the exception applies.*"); and In re Parker N. Am. Corp.,* 24 F.3d

1145, 1155 (9th Cir.1994) ("Section 502(d) operates to disallow claims of transferees

who do not surrender their avoidable transfers. It does not compel the surrender, nor

permit affirmative relief of any kind.") *with In re TMTS, Inc.*, 518 B.R. 329, 357-59

(Bkrcy.D.Md. 2014) vacated in part 2014 WL 6390312 (Bkrtcy D.Md. Nov. 14, 2014)

(denying motion to dismiss § 502(d) count because Complaint stated a cause of action

for avoidance of transfer). In this instance the Complaint alleges that the Defendants

have received avoidable transfers and also have filed Proofs of Claim. For efficiency's

sake, it makes sense to leave the disallowance count in, and to consider the § 502(d) claim if there is a ruling in the Trustee's favor on the avoidance counts. The objection to Count XV is, therefore, denied.

*Equitable and Injunctive Relief*

Count XIV asks for the freezing of the Defendants' assets, repatriation of the stock shares transferred in 2013, the imposition of a constructive trust, and the deposit of all of the transferred shares with the Court. ¶ 266. The Defendants response is that under the parties' January 30, 2015 Stipulation, "these shares are currently being held in the United States of America and are under the jurisdiction of the Court." Frorer Def. Brief, 60. That Stipulation, however does not recite that; it makes no mention of the 2013 transfers but is limited, instead, to the 2014 Transfer which was paid into court and which has since been deposited into an escrow account. *See* Jan. 30, 2015 Stipulation. For this reason, the Frorer Defendants' request to dismiss this count will be denied.

*Joinder of Necessary Party*

The Defendants' final challenge is not as to what is plead but, rather, who has been left out. They insist that the Debtor's general partner, Covenant Capital Management, L.P., and that entity's general partner, Covenant Capital Management, Inc., (the General Party Entities, or GPEs) as well as the principals of the Debtor's general partner (Messrs. Fretz and Freeman) have an interest in this litigation and so should be made parties. Frorer Br. 61-64

The Trustee's response makes two points: first, there is nothing to indicate that the General Partner Entities have a stake in the outcome of this litigation; second, and with regard to Messrs. Fretz and Freeman, while the complaint charges them with

various misdeeds, they are ascribed the status of joint tortfeasors. That, says the

Trustee, is insufficient to make them a necessary party. Tr. Br. Frorer 39-42.

Rule 19 of the Federal Rules of Civil Procedure provides,[12] in pertinent

part:

> (a) Persons Required to Be Joined if Feasible.
>
> (1) *Required Party*. A person who is subject to service of process
> and whose joinder will not deprive the court of subject-matter
> jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete
> relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the
> action and is so situated that disposing of the action in the
> person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to
> protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring
> double, multiple, or otherwise inconsistent obligations because of
> the interest.

F.R.C.P.19(a). The party requesting joinder of a necessary party need only establish that

one of the grounds under Rule 19 exists. *Whyham v. Piper Aircraft Corp.,* 96 F.R.D.

557, 560 (M.D.Pa.1982); *see also Koppers Co. v. Aetna Cas. & Sur. Co.,* 158 F.3d 170,

175 (3d Cir.1998) ("As Rule 19(a) is stated in the disjunctive, if either subsection is

satisfied, the absent party is a necessary party that should be joined if possible."). In the

event a plaintiff has not originally joined a necessary party, the proper remedy is to

order joinder. F.R.C.P. 19(a)(2).

---

[12] There are exceptions but they are not applicable here.

*Complete Relief*

Under Rule 19(a)(1)(A), it must be determined "whether complete relief may be accorded to those persons named as parties to the action in the absence of any unjoined parties...." *Gen. Refractories Co.,* 500 F.3d 306, 312 (3d Cir. 2007) (citing *Angst v. Royal Maccabees Life Ins. Co.,* 77 F.3d 701, 705 (3d Cir.1996)). In evaluating this subsection, the focus is solely on the named parties, and any effect a decision may have on absent parties is immaterial. *Id.*

From its reading of the Complaint, the Court concludes that complete relief can be afforded as between the present parties. The Trustee is suing the Defendants for the Pet360 stock shares or the value of them. The Complaint proceeds on various legal theories to that end. Ultimately, he will prevail and obtain the stock (or its present value) or the Defendants will rightfully retain it. That result may be achieved without the joinder of either the General Party Entities, or Messrs. Fretz and/or Freeman.

*Impair or Impede*
*Protection of Interest*

Rule 19(a)(1)(B)(i) directs this Court to consider whether there is an interest of either the GPEs and Messrs. Fretz and Freeman which would be affected by a ruling in this case. This generally requires a showing "that some outcome of the federal case that is reasonably likely can preclude the absent party with respect to an issue material to the absent party's rights or duties under standard principles governing the effect of prior judgments." *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 409 (3d Cir.1993). Joinder may also be required absent a preclusive effect where the effect of the court's decision on the absent party is "direct and immediate." *See Angst, supra* 77

28

F.3d at 705 (implying that the phrase "as a practical matter impair or impede" may have a broader meaning than that given by principles of preclusion).

Here the Court sees no such interest. The stock which the Trustee is trying to recover was originally the Debtor's property, but has since become the bankruptcy estate's property. It does not appear from the Complaint that the Debtor's general partner or its principals ever had an interest in the stock which might be affected by their not being joined as a defendant.

*Risk of Multiple*
*Exposure*

The lack of any such interest serves to refute the Frorer Defendants' argument that they legitimately must fear a later lawsuit filed against them regarding the stock transfers. *See* F.R.C.P. 19(a)(1)(B)(ii) (requiring the court to join non-parties when existing defendants at risk of double, multiple liability or otherwise inconsistent obligations). This rule was intended to protect named parties against inconsistent obligations, not inconsistent adjudications. *Holber v. Jacobs,* 401 B.R. 161, 175 n. 18 (Bankr.E.D.Pa.2009) (citing *Transdermal Prods., Inc. v. Performance Contract Packaging, Inc.,* 1996 WL 515497, at *2 (E.D.Pa.1996)). In other words, Rule 19(a)(1)(B)(ii) "protects a party against situations in which two court orders may be entered and compliance with one might breach the other...." *Id.* (citing *Transdermal Prods., Inc.,* 1996 WL 515497, at *2). By contrast, it does not apply in situations where a defendant may "successfully defend[ ] a claim in one forum, yet lose[ ] on another claim arising from the same incident in another forum." *Id.* (citing *Delgado v. Plaza Las Americas, Inc.,* 139 F.3d 1, 3 (1st Cir.1998)) (internal quotation marks omitted). Where two suits arising from the same incident involve different causes of action, defendants

are generally "not faced with the potential for double liability because separate suits have different consequences and different measures of damages." *Id.* (quoting *Delgado,* 139 F.3d at 3).

The Frorer Defendants maintain that this is precisely why the GPEs and their principals must be joined. Frorer Def. Br. 63-64. The Court disagrees. To reiterate, the Trustee has sued the Defendants for the stock or the value thereof. The Frorer Defendants cannot reasonably expect to be sued for that by the GPE's or Fretz/Freeman, because they lack standing to do so. *Anderson v. Acme Markets, Inc.*, 287 B.R. 624, 628 (E.D.Pa. 2009) (observing that the trustee succeeds to all causes of action held by the debtor at the time the petition is filed). The Court, therefore, finds no reason to compel the joinder of the GPE's and Messrs. Fretz and Freeman.

*Summary*

For the foregoing reasons, the Motions of the Defendants to Dismiss the Complaint (with the exception of Count II) will be denied.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated: <u>May 22, 2015</u>